# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KEITH J. CANNADY,** )<br>)<br>**Plaintiff,** )<br>) Case No. CIV-11-1450-HE<br>**vs.** )<br>)<br>**MICHAEL J. ASTRUE,** *Commissioner* )<br>*of the Social Security Administration*, )<br>)<br>**Defendant.** ) | |

## REPORT AND RECOMMENDATION

Keith Cannady ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

## Administrative Proceedings

Plaintiff initiated these proceedings by filing applications in May 2010, seeking disability insurance benefits and supplemental security income payments [Tr. 118 - 124 and 125 - 128]. He initially alleged that a lower back injury and leg difficulties became disabling as of January 1, 1992, *id.,* a date which was subsequently amended by his attorney to January 1, 2005 [Tr. 11, 137, and 177]. Plaintiff's claims were denied and, at his request, an

Administrative Law Judge ("ALJ") conducted a September 2011 hearing where Plaintiff, who was represented by counsel, and a vocational expert testified [Tr. 30 - 51 and 81 - 82]. In his September 2011 hearing decision, the ALJ found that while Plaintiff was unable to perform his past relevant work, he retained the capacity to perform other generally available work and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 11 - 26]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 1 - 6], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that he has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claims of Error**

Plaintiff maintains the ALJ erred by failing "to properly evaluate the Plaintiff's lumbar impairments and to give any consideration as to whether his lumbar impairments met or equaled a listing at step three" of the sequential process.[1] [Doc. No. 15, p. 3]. Plaintiff further asserts error due to the ALJ's failure "to properly consider the combined impact effect

---

[1] Unless otherwise indicated, quotations in this report are reproduced verbatim.

of the Plaintiff's exertional and nonexertional impairments at step five." *Id.* at 7.

**Analysis**

The ALJ determined that Plaintiff – who was fifty-three years old on the date of the decision [Tr. 17] – is severely impaired by residuals of a lower back injury and allied disorders [Tr. 16]. The ALJ also found that Plaintiff had the medically determinable mental impairment of depression but that such impairment caused no more than minimal limitation in Plaintiff's ability to perform basic mental work activities and was, accordingly, a nonsevere impairment. *Id.* Following his review of the entire record including the objective medical evidence and the opinion evidence and after finding that Plaintiff's subjective complaints were less than fully credible, the ALJ concluded that despite his impairments, Plaintiff has the physical residual functional capacity ("RFC")[2] to perform light[3] and

---

[2]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[3]Social Security regulations provide that

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

sedentary work [Tr. 17]. Nonetheless, Plaintiff is unable to climb ropes, ladders, and scaffolds and to work in environments where he would be exposed to unprotected heights and dangerous moving machinery parts. *Id.* With respect to Plaintiff's mental RFC, the ALJ concluded that he was able to understand, remember, and carry out simple through detailed instructions in a work-related setting and to interact with supervisors and co-workers under routine supervision. *Id.* The vocational expert testified that an individual with this RFC could not return to his work as a mechanic because it is performed at the medium exertional level but that certain unskilled jobs were available for such an individual [Tr. 46 - 48]. Based upon this testimony, the ALJ determined that Plaintiff was unable to perform his past relevant work as a mechanic, but, because he was capable of making a successful adjustment to other available work, he was not disabled [Tr. 24 - 25].

With regard to the evidence presented in this case, there is no medical evidence of record from Plaintiff's alleged onset of disability date of January 1, 2005, until he was seen by the consultative examining physician in July 2010 [Tr. 19]. Plaintiff reported to the examiner, Dr. Wiegman, that he injured his lower back in a motor vehicle accident in 1992 [Tr. 205]. He underwent MRI testing which revealed a herniated disc at L4-L5 with spinal stenosis and encroachment of the left nerve root along with moderate degenerative disc changes at L1-L2 [Tr. 191 - 192 and 205]. He advised Dr. Wiegman that he has experienced chronic pain since that time [Tr. 205]; he continued to work and, according to a Work Activity Report filed in 2010 in connection with his Social Security claims, he started his own automobile repair shop in 1997 and "was able to work eight hours a day, forty hours a

week." [Tr. 142]. As to his present work activities, Plaintiff stated, "Some days I can't work at all. Some days I can work for 2-3 hours. On an average week I work about 14 hours. I stopped filing taxes in 2005 because I wasn't working enough." *Id.*

On musculoskeletal examination, Dr. Wiegman found Plaintiff's arm, grip, and leg strength to be normal; his arm and leg range of motion was normal; he had normal range of motion in both his neck and back with no significant pain in his neck but he did have pain on movements of his back; there was no joint swelling, erythema, effusion, or deformities noted; and, when walking, "he slightly bends his back forward, so that he appears to be leaning forward while walking." [Tr. 206].

Dr. Wiegman's neurological examination revealed clear thought process and normal memory and concentration. *Id.* Plaintiff's cranial nerves were grossly intact; he had slightly decreased sensation on the outer part of his feet to light touch; his straight leg testing was negative. *Id.* He had a "fairly normal symmetric steady gait"; "was able to walk on his toes and heels separately, but had slight difficulty"; and, "was able to walk heel-to-toe with only slight difficulty." *Id.*

Dr. Wiegman's impression was as follows:

Back pain. The claimant has a history of motor vehicle accident back in 1992 with abnormalities in his spine at that time as noted in the history of present illness. He has had chronic pain since then and this affects his walking, standing, and lifting. He did appear to be in mild pain today with walking and with back movements and he appeared to be hunched over while walking. Otherwise he had a normal examination today except for some mild numbness in his feet.

[Tr. 207].

In August 2010, a State agency medical expert opined that Plaintiff could occasionally lift and carry up to twenty (20) pounds and frequently lift and carry up to ten (10) pounds; he could stand and/or walk for up to six (6) hours in an eight (8) hour workday and could sit for up to six (6) hours in an eight (8) hour workday [Tr. 213 - 220].

Plaintiff was seen in September 2010 in the Emergency Department of Ponca City Medical Center on complaints of lower abdominal pain [Tr. 226]. He reported his 1992 accident with nerve damage and stated that he suffered from back pain. *Id.* On musculoskeletal examination, he was found to have normal joint range of motion with no swelling or deformities; his neurologic examination was also normal with grossly intact cranial nerves and no motor or sensory deficits [Tr. 227]. The clinical impression was left renal colic and left ureterolithiasis [Tr. 228].

In November 2010, a State agency psychological expert noted that a possible mental impairment had been suggested by Plaintiff's statements that he has anxiety [Tr. 243]. The expert found that "[a] careful review of all the evidence indicates there are no work-related functional limitations resulting from the possible mental impairment, and there is no discrete mental impairment." *Id.*

Plaintiff was assessed for counseling services at the Edwin Fair Clinic on February 8, 2011, by Sherryl Jackson, a licensed professional counselor[4] [Tr. 268 - 275]. He reported worsening depression over the last several months as a result of his medical difficulties as

---

[4]It is possible that Ms. Jackson was, instead, a licensed professional counselor candidate [Tr. 275].

well as a short temper, mood swings, some anxiety, and constant worry [Tr. 275]. He was relying on family to aid in his support. *Id.* Ms. Jackson assessed Plaintiff with depression due to his medical condition and anxiety, assigned a current GAF score of 1,[5] and entered "Not Applicable" when called on to enter the highest GAF score for the past year [Tr. 273].

The next Edwin Fair Clinic record is a February 23, 2011, request for prior treatment authorization for Oklahoma mental health services [Tr. 255 - 265]; the request was approved [Tr. 253 - 254]. The request included a diagnosis of Major Depressive Disorder, recurrent episode, moderate due to medical issues as well as a current GAF assessment of 45[6] [Tr. 256]. Apart from the signature of the Plaintiff, the only other signature on that form is that of Steven Mallory [Tr. 260] who is credentialed as a licensed professional counselor and a licensed drug and alcohol counselor [Tr. 263].[7] The records from Edwin Fair Clinic do not contain any treatment notes.

Treatment notes from the Community Clinic in May 2011 show that Plaintiff sought treatment for back and leg pain with numbness; he was diagnosed with chronic back pain with stenosis [Tr. 250]. On subsequent physical therapy evaluation, his stated goal was to

---

[5]The only apparent support for the GAF score were moderate financial and health problems [Tr. 273].

[6]The request also stated that Plaintiff's highest GAF score for the past year was 55, an increase since the last request [Tr. 256]. Nonetheless, no previous request for services or notes of any treatment are contained in this record.

[7]Social Security regulations provide that evidence is needed from an acceptable medical source – a licensed physician or a licensed or certified *psychologist*, for example – in order to establish whether a claimant has a medically determinable impairment. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a).

reduce his back pain and improve his standing tolerance [Tr. 251]. When examined in connection with that evaluation, straight leg testing was negative [Tr. 251]. He had diminished sensation in his legs bilaterally and minimal tenderness to palpation as well as weakness throughout his trunk and a poor ability to extend his spine. *Id.* His posture was forward leaning, and his gait was side-bent to the left. *Id.* He demonstrated good flexion of the spine, minimal change in back pain, and both side bending and rotation of the spine were very limited. *Id.* It was found that he should benefit from back education and exercise with the long-term goal of improving abdominal support strength for his back [Tr. 251].

Finally, in August 2011, a physical therapist completed a Medical Opinion Re: Ability to Do Work-Related Activities in which he stated that Plaintiff could lift and/or carry twenty (20) pounds on an occasional basis and less than ten (10) pounds frequently [Tr. 276 - 277]. He could stand and/or walk and could sit for less than two (2) hours in an eight (8) hour workday. *Id.* He could sit for five (5) minutes before changing positions and could stand for less than five (5) minutes before changing positions. *Id.* He obtained relief from his pain by lying down. *Id.* He would need to shift positions at will and to lie down at unpredictable intervals once an hour during an eight (8) hour workday due to intermittent leg weakness and radicular symptoms from his back. *Id.* He would be limited in reaching and in pushing and in pulling [Tr. 277]. The therapist stated that Plaintiff's severe back pain and sensation changes in the lower extremities supported these limitations. *Id.*

**Lumbar Impairments**

Plaintiff's claim here is a legal one:

9

> [A]t step three, there is absolutely no analysis, mention or discussion by the ALJ of any kind whether or not the Plaintiff's admittedly severe back impairment met or equaled any specific listed lumbar impairment. In fact no specific listings are mentioned or referenced by the ALJ. The entirety of the ALJ's discussion on record at Step three consists only of a vague, ubiquitous, generic boilerplate template: "[t]he undersigned has carefully considered the claimant's signs, symptoms, and laboratory findings with the criteria specific in all of the Listings of Impairments. The undersigned finds no evidence that the claimant has an impairment, or combination of impairments, that meets or equals any listed impairment." (AR 17)

[Doc. No. 15, p. 4]. Specifically, Plaintiff asserts that he "has clearly shown" certain medical evidence which establishes that he "may meet or equal a listed impairment of 1.04(a) at step three." [Doc. No. 17, pp. 2 - 3]. Relying on the Tenth Circuit's decision in *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (an ALJ's summary conclusion that claimant did not meet or equal a listed impairment without discussing the evidence and identifying the relevant listing "is beyond meaningful judicial review"), Plaintiff maintains that the ALJ committed legal error at step three of the sequential process and that remand is mandated. *Id.* at 4-5.

Subsequent to its decision in *Clifton*, the Tenth Circuit clarified that *Clifton* did not "reject the application of harmless error analysis." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). The court explained that even where, as here, the ALJ failed to make specific step three findings, the ALJ's decision could still be affirmed when confirmed or unchallenged findings made elsewhere in the decision [i.e., at steps four and five] "conclusively preclude Claimant's qualification under the listings at step three" such that "[n]o reasonable factfinder could conclude otherwise." *Id*. at 735.

In order to meet or equal listing § 1.04A, Plaintiff bears the burden of establishing that he suffers from a disorder of the spine, such as spinal stenosis, with certain criteria: "[N]erve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]" 20 C.F.R Pt. 404, Subpt. P, App. 1, § 1.04.

Plaintiff maintains that he has, in fact, presented objective medical evidence which satisfies these criteria and which establishes that he may meet the listing [Doc. No. 15, pp. 5 - 6]. Even accepting Plaintiff's MRI report from 1992 of a herniated disc and encroachment of a nerve root as evidence of a listing-level impairment as of 2005 – particularly in light of Plaintiff's ongoing employment as an auto mechanic during the intervening years – he offers no evidence, for example, that he has had the positive straight-leg raising test that is required when there is lower back involvement. To the contrary, the undisputed medical evidence of record is that such testing has been negative [Tr. 206, 211, and 251]. Thus, as in *Fischer-Ross,* "the listing sets out exacting criteria . . . that are simply not present in the medical record." *Fischer-Ross,* 431 F.3d at 735. *See also Candelario v. Barnhart,* 166 Fed.Appx. 379 (10th Cir. 2006) (discussing required § 1.04A criteria).

Further, in making his RFC assessment, the ALJ found that Plaintiff could perform all work at the light exertional level as long as he was not required to climb ropes, ladders, and scaffolds or to be exposed to unprotected heights and dangerous moving machine parts

[Tr. 17].[8] In *Fischer-Ross,* the court examined the claimant's contention that he satisfied § 1.04 and found that under all three sections of the listing – including the section at issue here, § 1.04A –

> the ALJ's RFC findings – particularly the finding Claimant retains the primary postural capacities, i.e., sitting, standing, walking, for sedentary, light, and even medium work, as well as the ability to lift at the light RFC level and to stoop, crawl, crouch and kneel occasionally – conclusively negate the possibility of any finding that Claimant is presumptively disabled under the pertinent listing.

*Fischer-Ross,* 431 F.3d at 735. Consequently, here as in *Fischer-Ross,*

> the ALJ's confirmed findings at step four and five of his analysis, coupled with indisputable aspects of the medical record, conclusively preclude [Plaintiff's] qualification under the listings at step three. No reasonable factfinder could conclude otherwise. Thus, any deficiency in the ALJ's articulation of his reasoning to support his step three determination is harmless.

*Id.*

### **Mental Impairments**

Here, Plaintiff's argument is that "[t]he ALJ, as prima facie error, did not, fully consider and evaluate the combined impact effect of the Plaintiff's mental and physical impairments, as required, at Step five." [Doc. No. 15, p. 7]. To the contrary, the ALJ's decision reveals that he found Plaintiff's depression to be a medically determinable impairment but not a severe one because, singly and in combination, it did "not cause more

---

[8]The ALJ also specifically found that "[t]he record fails to demonstrate the presence of any pathological clinical signs, significant medical findings, or any neurological abnormalities which would establish the existence of a pattern of pain of such severity as to prevent the claimant from engaging in any work on a sustained basis." [Tr. 22].

than minimal limitation in the claimant's ability to perform basic mental work activities." [Tr. 16]. Then, in assessing Plaintiff's RFC, the ALJ clearly considered the functional effects of Plaintiff's physical and mental impairments and concluded, with respect to any mental restrictions, that "he is able to understand, remember, and carry out simple through detailed instructions in a work-related setting, and is able to interact with co-workers and supervisors, under routine supervision." [Tr. 17].

Neither is there, as Plaintiff claims, an inconsistency between the ALJ's recognition of the February 2011 assessment by a licensed professional counselor of a depressive disorder and a GAF score of either 1 or 45 [Tr. 256 and 273] and the ALJ's mental RFC assessment [Tr. 17]. The case record reflects [Tr. 20], as required, *see* Social Security Ruling 06-03p, 2006 WL 2329939 (SSR-06-03p) at *5, the ALJ's consideration of the GAF assessment by a LPC who is not an "acceptable medical source." And, as required, *id.* at *6, the reasoning behind the ALJ's finding that Plaintiff's depression did not restrict his ability to perform basic mental work activities is also clear from the record: he provides for his basic needs; he gets out and helps with fundraisers; he did not want medication but, instead, therapy to treat his medical condition-related depression; and, his prognosis with therapy was good [Tr. 16 and 20]. Likewise, the ALJ's reasoning finds substantial support from the opinion of the State agency psychological expert [Tr. 23 and 243]. Plaintiff's claim of error in this regard is unavailing.

## **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the foregoing reasons, the undersigned recommends that the Commissioner's

decision be affirmed. The parties are advised of their right to object to this Report and Recommendation by the 10th day of January, 2013, in accordance with 28 U.S.C. §636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 21st day of December, 2012.

_____
BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE